Filed 3/29/13  M.V. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| M.V., | |
| Petitioner, | E057868 |
| v. | (Super.Ct.No. SWJ001172) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John N. Monterosso, Judge.  Petition denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

1

Petitioner M.V. (mother) challenges the decision of the juvenile court to terminate reunification services and set a hearing under Welfare and Institutions Code section 366.26[1] to consider a permanent plan for her minor son. Mother argues that the juvenile court abused its discretion when it found that the reunification services offered to her were reasonable and, also, that return of the minor would create a substantial risk of detriment to him. For the reasons explained *post*, we disagree with these contentions and, therefore, deny the petition.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

H.H. (minor), who was born in January 2009, was first detained when social workers from Riverside County Department of Public Social Services (the "department") received reports of domestic violence involving both parents. Mother had several injuries, which she said she had sustained as a result of an earlier altercation with the father.[2] Mother declined to move herself and the minor out of the house she shared with father because she said she did have anywhere to stay and refused to move to a shelter.

Both parents tested positive for marijuana use. Mother insists that she uses this drug legally as she has a medical marijuana card. She states she smokes marijuana twice a week to treat her insomnia and anxiety, as well as to help her appetite because she is so

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father was arrested in January 2011 for a domestic violence incident. He pleaded guilty to a charge of violating Penal Code section 273.5, subdivision (a), and is currently incarcerated. The juvenile court terminated reunification services for him at the contested review hearing in July 2011. He is not a party to this petition.

thin. She informed the social worker that she typically smokes in the garage after the minor has gone to sleep and she does not view her use of marijuana to be a problem.

Both parents also have rather lengthy criminal histories for theft and drug crimes. In addition, father had convictions for domestic violence.

In 2002, mother's oldest child was made a dependent child when allegations of general neglect were substantiated. Mother received family reunification services and that child was returned to her in 2003. However, the father of that child currently has sole physical custody of him, as well as a younger sibling.

At the November 2010 jurisdictional hearing, the juvenile court found the allegations of the amended petition to be true, and physical custody of the minor was removed from the parents. The court also ordered that reunification services be provided to mother that included, pursuant to the case plan: substance abuse assessment, random drug testing, substance abuse treatment program, parenting class, individual/conjoint therapy, and a domestic violence program.

The social worker stated in the status review report of May 10, 2011, that mother had received referrals for services. Because mother had previously participated in counseling services for over a year, she needed to undergo a psychological evaluation to determine if she could benefit from counseling services. The social worker observed a visit and found that both parents appeared loving and nurturing to the minor, who appeared to be well bonded to them. The social worker concluded, however, that mother had made only minimal progress toward the completion of her plan, and that she was uncooperative and unwilling to communicate with the social worker. Mother had

received positive feedback from her anger management counselor, completed parenting education, and had been faithful in visitation.

In an addendum report filed June 9, 2011, it was recommended that reunification services be terminated. Mother had refused to participate in random drug testing. She had refused to leave the home owned by the father's parents, even though the father had been incarcerated, and his parents reported she was renting out rooms without their consent.

In another addendum filed in July 2011, it was reported that mother remained defiant in her refusal to participate in random drug testing. She had not been assigned to a therapist because she failed to demonstrate 30 days of sobriety. Also, she had participated in a psychological evaluation and was diagnosed with a personality disorder with narcissistic, antisocial and borderline traits. The psychologist, Dr. Suiter, suggested that mother would require extensive psychotherapy that was beyond the scope of the mental health services that could be provided in a six- to 12-month time frame.

At the review hearing in July 2011, the juvenile court continued reunification services for the mother, ordering therapy and randomized and on-demand drug testing for her.

The department filed a report on September 27, 2011, informing the court that the mother had been arrested for driving under the influence of a controlled substance, methamphetamine, and a probation violation. Mother admitted to police that the methamphetamine and pipe were hers. She also stated that she provided sexual favors to obtain the drugs, and that she sold methamphetamine to supplement her income.

4

The department also became aware of a "You Tube" video mother had posted entitled "Judges, Public Defenders and Foster Homes." Mother discusses her experiences with the dependency court system and the injustice of having her son removed from her. She ended the video with a statement that read "all this for a plant"—apparently referring to her use of marijuana. Pictures of the minor and his caregiver were featured on this Internet site, although mother had not received permission of the caregiver or the department to do so.

In addition, mother had tested positive for marijuana three times and had "no showed" four other times since June. Mother admitted that on July 26, 2011 she was under the influence of Klonopin (or Clonazepam) and had passed out. This drug had apparently been prescribed to reduce anxiety in place of marijuana.

After this report was filed, mother made an almost complete turnaround in her behavior. She was immediately enrolled in the "Family Preservation Court" program, and as of December 2011 she was in full compliance. She tested negative for all substances as of October 27, 2011, attended 12-step meetings, and participated in anger management classes, as well as individual counseling. Based on mother's compliance, at the 12-month status review hearing in January 2012, the juvenile court ordered the minor returned to her care and custody and the department was ordered to provide family maintenance services.

However, prior to the status review hearing, mother had relapsed, and the department filed a supplemental petition under section 387. In the accompanying report, the social worker stated that on August 14, 2012, she had talked with mother's case

5

manager in the Family Preservation Court who said there was concern that clients in this group were consuming baking soda within two hours of testing so that they would not test positive. The case manager said she would be requesting mother to drug test on that date. Within two hours of this conversation, mother called the social worker and admitted that the day before she had taken two hits of marijuana and smoked "a bowl of meth." Mother stated she had been in a "funk" the last couple of weeks and was scared to graduate from Family Preservation Court and lose her support.

In a face-to-face meeting two days later, mother told the social worker that she was "triggered" to use methamphetamine due to her current living arrangements. She indicated that her current roommates abused methamphetamine and she began to use it within one week after moving in on July 20, 2012. She expressed concern about parenting her son due to his developmental problems. She also admitted that men were her weakness and that she was in a romantic relationship with a man from her group.

An initial decision was made that the minor would remain in the mother's care with continued court involvement. Mother signed a relapse prevention plan from the court and new living arrangements were found for her and her son. As part of the plan, mother was to have no romantic relationships or unneeded contact with men for a minimum of 30 days.

Soon, however, the case manager received an anonymous report that mother had not stayed the previous night in the new residence but had spent the night with a man who was a known drug dealer. Mother appeared in court the same day as this report was received and confirmed she had not stayed the night at the new residence. She said she

had been with a friend, and denied it was the person who was of concern to the court program and the department. When asked why she had used, mother responded, "You don't understand. It has been so stressful lately. [The minor] is a handful. You just don't understand how hard it is to take care of him." At this point, she was being terminated from the court program. Mother left the courtroom and attempted to leave the courthouse, refusing to inform social workers of her son's whereabouts. Only after deputies intervened did mother reveal the minor's whereabouts, and he was taken into protective custody later that day.

At the detention hearing in August 2012, it was ordered that mother be provided reunification services, including alcohol and drug testing, substance abuse treatment, parenting education, and counseling. The court authorized minor's return to mother upon a suitable home evaluation, and mother being clean and following all steps in program.

Mother enrolled in Gibson House, which is a 45-day residential substance abuse treatment program. She did not complete the program and left it on September 19, explaining to the counselor that she was "unable to sit around and complete substance abuse treatment as she had other legal issues that she had to take care of." She had positive drug tests on September 5, and October 28, 2012.

Mother entered MFI Recovery Center's residential program in late October 2012, and completed the program on December 9, 2012. Thereafter, she participated in its outpatient program receiving aftercare services.

Because three of mother's appointed attorneys declared a conflict in succession, the contested jurisdictional hearing on the supplemental petition was not heard until

7

January 2013. Mother testified at this hearing on January 9, 2013, that in addition to participating in MFI's aftercare program, she had obtained employment, maintained a residence, regularly attended 12-step meetings, and maintained contact with her sponsor and her son.

The social worker supervising the case admitted during her testimony at this hearing that mother was then currently in compliance with her case plan.

At the conclusion of the hearing, the juvenile court made the requisite jurisdictional findings and denied reunification services to the mother. The court commented that mother's entire history with dependency proceedings going back 10 years had to be considered in order to evaluate her substance abuse problem and determine whether the minor could be safely returned to her care. In view of her history, it opined that the department would have been justified when mother relapsed in August 2012 not to attempt to keep the minor in her care by devising a safety plan. This plan was devised based on mother's input as to what her temptations were. However, mother did not comply with the plan, resulting in termination from Family Preservation Court.

From late August to late October, mother continued to use drugs. Eventually, she did get into the MFI program and had been clean for 77 days, but the court noted that mother seems to do well when there is intense scrutiny and oversight, but does not do so well when she is on her own and must deal with stressful situations. It concluded that there still exists a substantial risk of harm to the minor if he were placed back in mother's care.

The juvenile court indicated that the minor had been originally removed September 26, 2010, and had been out of the home for over 18 months. The total number of months of services provided exceeds 28 months. The court found that the department had provided reasonable services. Although there had been some concerns about the minor's development, the court commented that his behavior was really no different from almost any other three or four year old as confirmed by an assessment by the Inland Regional Center. Thus, contrary to mother's suggestion, the department had not simply placed an extremely troubled child in her care without adequate support and instruction. Mother complained that the department did not prepare her, but the court pointed out that it was not the department's job to prepare her, but only to provide her the tools and opportunity to help her prepare herself.

## DISCUSSION

Mother asserts that the juvenile court erred in two respects. First, it erred in finding that there was a substantial risk to the minor if he were returned to her care. Second, she claims that she was not provided reasonable reunification services. Neither contention is well taken.

First, mother contends that since she completed her drug treatment program and had been clean for 77 days, the juvenile court's finding regarding substantial risk is necessarily not supported by substantial evidence. No so. Even though she was in compliance with that component of her case plan at the time of the hearing, the juvenile court properly considered her entire history and concluded that she had not demonstrated an ability to refrain from drug use when she was in stressful situations. By her own

9

admissions, the difficulties she encountered in trying to parent the minor were a significant factor that contributed to her relapse. Mother, however, still fails to recognize that there is a link between her sobriety—or lack thereof—and her ability to parent. Weighing her relatively brief period of sobriety against her long history of drug abuse, particularly when confronted with stressful situations, the juvenile court could well find that the minor faced a substantial risk of harm if returned to mother's care.

The standard of review when a parent challenges the reasonableness of the reunification services provided or offered is whether substantial evidence supported the juvenile court's conclusion that such services were reasonable. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Substantial evidence is evidence that is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "All conflicts must be resolved in favor of the respondent and the reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court." (*In re Albert B.* (1989) 215 Cal.App.3d 361, 375.)

The juvenile court's order is supported by substantial evidence. Mother complains about the department's failure to provide services after the supplemental petition was filed and the minor detained, asserting that the services she did receive, she secured on her own or through the Family Preservation Court program. However, the department was not obligated to provide services in addition to those provided as part of the latter program. For instance, there was no need for the department to make arrangements for housing or drug testing when those arrangements had already been made.

It is true that after she was terminated from Family Preservation Court, mother made her own arrangements for residential programs, but this was the result of her own decisions rather than lack of effort by the department. We believe it is not particularly significant that a social worker did not visit her while she was in the residential treatment program since it was obvious that she was receiving treatment for her primary problem, substance abuse, and counselors in that program were monitoring her progress.

Overall, while the services provided may not have been ideal, they were reasonable.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


KING
          Acting P. J.


We concur:


MILLER
      J.


CODRINGTON
      J.


11